IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KASIMBEKOV KOMOLIDDIN TOHIRJANOVICH,** Petitioner, | : : : : : | CIVIL ACTION (Habeas Corpus) |
| *v.* | : : : | |
| **GEORGE W. BUSH,** *et al.*, Respondents. | : : : : : | ORAL ARGUMENT REQUESTED No. 05-cv-00994 (JDB) |

**PETITIONER'S MOTION FOR FACTUAL RETURNS AND MEDICAL
INFORMATION AND MOTION FOR RECONSIDERATION
OF ORDER TO STAY PROCEEDINGS**

**Procedural History**

Petitioner, who is a prisoner at Guantanamo Bay, sent a *pro se* request for habeas relief to the Court, which was docketed on May 18, 2005. On June 3, 2005, the government filed a *Motion to Stay Proceedings Pending Related Appeals and for Coordination ("Stay Motion")*. On June 28, 2005, this Court ordered the case stayed pending resolution of the appeals in In re Guantanamo Detanee Cases, 335 F.Supp. 2d 443 (D.D.C. 2005), and Khalid v. Bush, 355 F.Supp. 2d 311 (D.D.C. 2005), and ordered the entry of the standard protective orders previously entered in In re Guantanamo Cases, No. 02-CV-0299. Undersigned counsel was appointed to represent Petitioner on October 14, and on November 2, 2005, counsel filed an *Amended Petition for a Writ of Habeas Corpus* on behalf of Petitioner. Petitioner hereby requests that the Court order factual returns, order the government to provide medical information regarding Petitioner to counsel and that the Court reconsider its order staying the proceedings.

**Factual Returns and CSRT**

Mr. Tohirjanovich has petitioned this Court for habeas relief. He is held without charges and has alleged that he is not an enemy combatant and that there is no justifiable reason for his detention. He is entitled to be informed of the nature of the government's allegations against him under the Fifth and Sixth Amendments to the United States Constitution.

The government argued that a stay should include any requirement to submit factual returns to the *Petition*. However, the Respondents' contention was based upon the fact that Petitioner was unrepresented at the time. *Stay Motion* at 5 ("often a full explanation of the reasons justifying the detention of a particular detainee necessarily involves classified or otherwise protected information that ... may not be shared with the detainee"). Petitioner is now represented. Undersigned counsel have begun the process of seeking security clearances as provided for in the standard protective orders entered in most of these cases and fully intend to abide by their requirements.

Moreover, the government indicated that the typical factual return in these cases "have typically consisted of records of proceedings before the Combat Status Review Tribunals." *Id.* at 4. Thus, the government conceded that it has already organized the facts behind the charges. Indeed, as a result of a successful Associated Press Freedom of Information Act case, the government was required to release a sampling of unclassified CSRT files for about 60 detainees, which can be viewed at http://wid.ap.org/documents/detainees/list.html. (The files typically have name and country redacted).[1] It makes no sense for the government to produce files, even in redacted form, to the Associated Press for viewing by the entire world and not

---

[1] A cursory review of any of these files shows that the government already has well organized factual files that it can produce quickly.

produce the same file to a petitioner's attorney.  Without the ability to review the CSRT file, the undersigned will have great difficulty preparing the case or discussing the facts with his client.  The Court should order the government to produce Petitioner's CSRT file to his attorneys subject to all the provisions of the protective orders.

At least nine judges of this bench, including this Court as well as Judges Friedman, Huvelle, Kessler, Roberts, Sullivan, Urbina and Walton, have ordered the government to make factual returns in Guantanamo cases.  This Court, in Al-Anazi v. Bush, 370 F.Supp.2d 188 (D.D.C. 2005), considered and rejected the same argument the government poses here.  The Court concluded that "the factual returns appear necessary for petitioners' counsel effectively to represent petitioner.  Indeed, even initial conversations by counsel with their clients may be very difficult without access to this basic factual information." Id. at 200.

In Battayav v. Bush, 05714 docket number 12, page 3, Judge Walton came to the same conclusion, reasoning that the factual returns were necessary for petitioners' counsel to effectively represent them even in an initial meeting.  Judge Urbina also rejected the same arguments the government makes here:

> As to the government's concerns regarding classified information, the protective orders that counsel anticipates will be entered in this case will guard against any inadvertent disclosures.  Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the return; the court is confident that the government can handle this task.

*Qayed v. Bush*, 05-454, docket number 5, page 2.  See also, Judge Kessler's order in *Al-Adahi v. Bush*, 05-301, docket number 26, page2 ; Judge Friedman's order in *Al-Wazan v. Bush*, 05-329, docket number 37, page 1; Judge Huvelle's order in *Kurnaz v. Bush*, 04-1135, docket number 12, page 5; Judge Robert's order in *El-Banni v. Bush*, 04-1144, docket number 10, page 7; and Judge

Sullivan's order in *Errachidi v. Bush*, 05-640, docket entry of 21 April 2005.

Judge Sullivan ordered the government to file its factual return within seven days. Judge Roberts ordered the government to file a factual return within 30 days after entry of the protective order. Judges Urbina, Huvelle, Friedman and Kessler allowed for 90 days. This Court and Judge Walton allowed for 120 days. On two occasions when the government was ordered to provide factual returns within seven days it was able to comply without issue. See *Errachidi v. Bush*, 05-640, docket numbers 15 and 16 (Judge Sullivan on 21 April 2005 ordered the government to make its return within seven days and the government did so on 26 April 2005) and *Abdullah v. Bush*, 05-23, docket numbers 24-26 (Judge Roberts on 8 April 2005 required the government to file factual returns by 14 April 2005 and the government did so on 15 April 2005). Petitioner respectfully requests that this Court require that factual returns be filed within 30 days.[2]

**Motion to Compel Disclosure of Medical Condition of Petitioner**

Because of press accounts of hunger strikes currently underway at Guantanamo Bay, counsel, on October 31, 2005, requested information from the government regarding whether or

---

[2]Moreover, denying Petitioner's counsel access to factual returns also puts Petitioner in the dark in regard to his arguments against the imposition of the stay. For example, the government submitted that the appeals in the pending cases "will address the core issues" in Petitioner's case. *Stay Motion* at 1. However, all of the Petitioners in Khalid and most of the Petitioners in In re Guantanamo were captured outside Afghanistan. See Khalid at 316 ("petitioners are non-resident aliens captured outside Afghanistan"); In re Guantanamo at 447 ("many of these individuals may never have been close to an actual battlefield ..."). That fact was relied upon by each of the district court judges in determining the applicability of the protections of certain constitutional, procedural and international law to the detainees. On the other hand, it appears that Petitioner was taken into custody in Afghanistan. The government's factual returns would either confirm or deny this. The Court would then be in a position to determine whether Petitioner's case is distinguishable from Khalid and/or In re Guantanamo or if those cases would be more likely to control the outcome of the instant litigation

not Petitioner is participating and any information on his medical condition.  See Exhibit A, attached.  On November 4, counsel for the government responded by letter that they would not disclose such information.  See Exhibit B, attached.  Counsel hereby requests that the Court order the government to do so.

The situation at Guantanamo Bay is dire.  There is a hunger strike in progress that could result in the deaths of detainees.  See e.g. *Lawyers Seek Improved Conditions for Suicidal Detainee*, Washington Post, November 5, 2005, at A08 ("two dozed detainees are being force-fed at the facility because of a lengthy hunger strike protesting conditions and treatment at Guantanamo Bay"); *Three Bahrainis Released from Guantanamo*, New York Times, November 5, 2005 ("nearly 30 prisoners have been on hunger strike since August to protest their confinement"); *Guantanamo Desperation Seen in Suicide Attempts*, Washington Post, November 1, 2005, at A01 ("Two dozen Guantanamo Bay detainees are currently being force-fed in response to a lengthy hunger strike...").

In a recently unclassified declaration, an attorney for a detainee described her observations from a recent visit to Guantanamo.  *Supplemental Declaration by Julia Tarver, Esq.* (filed in Al Joudi v. Bush, No. 05-0301 (GK), D.C. District Court, on October 13, 2005), Exhibit C, attached.  Tarver describes the deteriorated condition of her clients and notes their descriptions of the violent force feeding to which they were subject.

The government will not permit counsel to have access to Petitioner until the security clearance process is completed.  While counsel has begun that process, it will take many weeks before it is complete and counsel will have the opportunity to meet with Petitioner at Guantanamo Bay.  In the meantime, Petitioner may be dying, or his health may be in serious jeopardy.  Counsel is merely requesting basic medical information regarding Petitioner's

5

condition and a simple yes or no answer to whether he is participating in the hunger strike. Indeed, the medical information will be crucial to counsel in determining how quickly and urgently counsel should arrange to see Petitioner at Guantanamo once the security clearances are received. Surely, such a request does not overly burden the government.

**Respondents' Motion for Stay**

Prior to the appointment of counsel, the government sought a stay of all proceedings pending the resolution of all appeals in <u>In re Guantanamo Bay Detainee Cases</u>, 355 F.Supp.2d 443 (D.D.C. 2005), <u>petition for interlocutory appeal granted</u>, No. 05-8003 (D.C. Cir. 10 March 2005) and <u>Khalid v. Bush</u>, 355 F.Supp.2d 311 (D.D.C. 2005), <u>appeals docketed</u>, Nos. 05-5062, 05-5063 (D.C. Cir. 2 March 2005). The government argued that because the "core issues" in this case are at issue in these appeals, "[i]t makes no sense for these cases to proceed in advance of resolution of the appeals; further proceedings would require the expenditure of judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated when the Court of Appeals provides guidance regarding handling of the claims in these Guantanamo Bay detainee cases." *Stay Motion* at 3. This Court granted the government's motion without the benefit of a response from Petitioner. Petitioner hereby request that the Court reconsider that order.

A party seeking a stay of judicial proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." <u>Landis v. North American</u>, 299 U.S. 248, 255 (1936); <u>accord</u>, <u>Dellinger v. Mitchell</u>, 442 F.2d 782, 786 (D.C. Cir. 1971). Thus "in deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay" and "then balance interests favoring a stay against interests frustrated by the action." <u>Cherokee</u>

Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997). See also Klein v. Adams & Peck, 436 F.2d 337, 339 (2nd Cir. 1971) ("The right to proceed in court should not be denied except under the most extreme circumstances.").

      Here the government has made no showing of hardship. And the granting of a stay prejudices petitioner. Any balancing of harms must begin with the recognition that Petitioner has been incarcerated virtually incommunicado for over three years without charge, access to counsel or any meaningful due process protections. Further, the government has recently released military and other federal agency documents confirming reports from released detainees and news organizations that Guantanamo detainees have been subject to systematic physical and mental abuse that can only be described as torture. These documents were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. See American Civil Liberties Union v. Department of Defense, No. 04-CV-4151 (AKH) (S.D.N.Y.). The documents can be viewed at http://action.aclu.org/torturefoia/.

      Moreover, the granting of the stay does not comport with the Supreme Court's mandate to "consider in the first instance the merits of petitioners' claims." Rasul v. Bush, 124 S. Ct. 2686, 2699 (2004). It is also wholly inconsistent with a long line of cases emphasizing that habeas cases must be handled expeditiously. Preiser v. Rodriguez, 411 U.S. 475, 496 (1973) ("the federal habeas statute provides for a swift, flexible, and summary determination."); Carafas v. LaValle, 391 U.S. 234, 238 (1968) (habeas review is designed "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); Stack v. Boyle, 342 U.S. 1, 4 (1952) ("Relief in this type of case must be speedy if it is to be effective.").

Nor is there any practical reason to wait for the decision of the court of appeals. In <u>Rasul</u> the Supreme Court held that federal district courts have jurisdiction to hear the habeas corpus claims of Guantanamo detainees, noting that their allegations "unquestionably describe custody in violation of the Constitution or laws or treaties of the United States." 124 S. Ct. at 2698, note 15 (internal quotations omitted). The government's contention on appeal that the detainees have no rights whatsoever will not succeed.

### The Duration of Any Stay

If the Court denies reconsideration, at the very least the Court should limit the duration by directing that the stay will only extend to the date the court of appeals decides the pending appeals. After the ruling of the circuit court, the government will have 90 days to petition for a writ of certiorari, and there is no time limit on the Supreme Court's consideration of such a petition. At the very earliest, the Supreme Court would consider the cases during the present term. Even assuming expedited briefing and consideration, the Supreme Court would not likely issue a decision until sometime in 2007. In the meantime Petitioner will have entered at least his fifth year of illegal detention. In <u>Landis</u> the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the conditions of Mr. Tohirjanovich's years of incarceration and the potentially indefinite duration, it is difficult to conceive of a delay more immoderate or consequences more oppressive than his having to wait at least another full year to proceed with his habeas litigation. In <u>Landis</u> the Supreme Court vacated a stay in a securities case intended to last through intermediate and Supreme Court appeals, holding that "relief so drastic and unusual overpasses the limits of any reasonable need ..." 299 U.S. at 257. <u>See</u> <u>also</u> <u>Dellinger</u>, 442 F.2d at 785-88. Surely here,

8

where liberty interests are at stake, the lengthy stay requested by the government is relief even more drastic.

## CONCLUSION

For the reasons discussed above, Petitioner respectfully requests that the Court order the government to provide factual returns within thirty days, order the government to provide medical information regarding Petitioner forthwith, and vacate its order staying the proceedings.

    Respectfully submitted,

/s/Billy H. Nolas
Billy H. Nolas (DC 399275; PA 83177)
Assistant Federal Defender
Maureen Rowley (PA 33020)
Chief Federal Defender
David McColgin (PA 42963)
Supervising Appellate Assistant Federal Defender
Cristi Charpentier (PA 62055)
Shawn Nolan (PA 56535)
Mark Wilson (PA 26887)
Assistant Federal Defenders
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520; (215) 928-1100

Dated:   November 16, 2005

Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served via the e-filing system on the following counsel of record for respondents:

Mr. Terry Henry
US DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7144
Washington, DC 20529-0001

/s/Billy H. Nolas
Billy H. Nolas

Dated: November 16, 2005