# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | )<br>)<br>)   MISC. NO. 08-0442<br>)<br>)<br>)<br>)<br>)<br>) |

DECLARATION OF DANIEL J. DELL'ORTO

I, Daniel J. Dell'Orto declare as follows:

1. I am the Acting General Counsel for the Department of Defense ("DoD"). The statements contained in this declaration are based on my personal knowledge or on information I have gained in my official capacity.

2. This declaration is provided in order to document the efforts DoD has undertaken to defend, on the merits, more than 250 habeas corpus proceedings filed by or on behalf of individuals detained by DoD at Guantanamo Bay, Cuba. DoD has taken unprecedented steps to marshal resources and develop appropriate procedures for gathering and reviewing information on these detainees, developing pertinent information into a factual return and receiving appropriate permissions to use that information in the habeas proceedings.

3. As of today, DoD has approximately 30 attorneys working exclusively on habeas corpus litigation, including more than 20 attorneys who were diverted from other offices within DoD that provide legal advice to a variety of DoD organizations and components, some of which are located outside of the Washington, D.C. area. Each of these diverted attorneys is now working full-time on habeas corpus matters. Their offices have redistributed these attorneys' work to

other attorneys within the office, at a time when each office is supporting a DoD organization or component engaged in DoD's war mission. The first of these attorneys arrived in mid-July 2008, and additional attorneys have arrived during July and August. Furthermore, the Office of the General Counsel is in the process of hiring 40 attorneys who will replace these diverted attorneys, as well as additional administrative support staff.[1]

4. The DoD attorneys described above work directly with attorneys from the Department of Justice. There is at least one attorney from each organization assigned to each detainee's factual return. This attorney team works together on reviewing the information and developing a factual return for the detainee.

5. The DoD attorneys described above have been actively involved in gathering and reviewing information for potential use in the factual returns, including intelligence and law enforcement material which originated with DoD or other government agencies. (To assist these attorneys with this effort, DoD has diverted intelligence or other personnel from their other intelligence-related work (including personnel from the Joint Intelligence Group at Guantanamo), in order to have them work full-time on the habeas litigation.). When a document is proposed for inclusion in a factual return, it must then be reviewed to determine who originated the information contained within it. The originator may be a DoD organization or it may be another U.S. government agency, or an individual document may contain a combination of the two. Once the originator or originators are identified, permission must be sought from those organizations before DoD can use the information in a habeas corpus proceeding, similar to the process followed when information is being requested for use in criminal proceedings or for release under the Freedom of Information Act. During this review, the organization considers issues

---

[1] DoD has also been standing up the infrastructure for these attorneys, including appropriating sufficient office space in the Washington, D.C. area for what will ultimately be more than 50 DoD attorneys and support staff.

such as the classification level of the information, the receiving party's security clearance and need to know the information, and the potential harm to sensitive methods or sources of intelligence that may be implicated by the information's use in the habeas proceeding. The originator of the information is the organization that is capable of making decisions about harm from dissemination and the release of the information in the habeas context.

6. To process information that originates with a DoD organization (and may be reflected in the narrative document that cites that information), DoD has created a multi-person team of personnel which is responsible for coordinating the process of seeking permission from the relevant DoD organization(s). For the documents identified to date, this team was required to coordinate with the following DoD organizations: United States European Command, United States Central Command, United States Pacific Command, United States Southern Command (which has cognizance over the detention facility at Guantanamo), United States Special Operations Command, the Criminal Investigation Task Force, the Defense Intelligence Agency, the National Security Agency, the National Geospatial-Intelligence Agency and the Department of the Army. Upon being contacted, personnel from each of these organizations reviewed the relevant documents, for the purpose of conducting the analysis described above. For some of the documents, this review resulted in a conclusion that another DoD organization or U.S. government agency had equities in the information being reviewed, thus requiring the document to be further coordinated.

7. Within the last 30 days, the team has coordinated the review of almost 1,900 documents that originated with DoD organizations (all of which are multi-page documents), in addition to expending a significant amount of time preparing supporting materials and coordinating them for

use in the litigation. Approximately 1,700 of those 1,900 documents were cleared by their DoD originators for use in the habeas corpus proceedings. (The remaining 200 documents could not be cleared by DoD as they contained some information that originated with other U.S. government agencies and thus are undergoing further coordination.) Before being used in the factual return, however, those 1,700 documents are also subject to review by the Central Intelligence Agency, as discussed in its declaration being submitted to this court, for any equities that organization may have in the material.

    I declare under the penalty of perjury and the laws of the United States that the foregoing statement is true and accurate to the best of my knowledge.

August 29, 2008                Daniel J. Dell'Orto